IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) 2:05cr267 |
| | ) Judge Thomas M. Hardiman |
| PAMELA TILLEY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

On September 13, 2005, a grand jury indicted Defendant Pamela Tilley (Tilley) on one count of conspiracy to transport a minor in violation of Title 18 U.S.C. §2423(e). Tilley filed a motion to suppress on January 25, 2006, asserting violations of her rights under both the Fourth and Fifth Amendments to the United States Constitution. On May 4, 2006, the Court held an evidentiary hearing regarding Tilley's Fourth Amendment claims, and conducted a subsequent hearing on June 20, 2006 regarding her Fifth Amendment claims. For the reasons that follow, Tilley's motion will be denied.

**I.    Factual Findings**[1]

On August 16, 2005, at approximately 1:00 a.m., City of Pittsburgh Police officers encountered a motor vehicle parked on the North Side of Pittsburgh in a church parking lot. Officers approached the vehicle thinking it may have been stolen and abandoned. Upon arriving at the vehicle, the officers encountered Tilley, Defendant Gregory Lowery (Lowery), Tilley's 14

---

[1] Having already ruled from the bench at the conclusion of the May 4, 2006 hearing on the Fourth Amendment claims, the Court will discuss herein only the facts relevant to Tilley's Fifth Amendment claim.

year-old daughter, and the daughter's 15 year-old friend. When the officers learned that one of the minors was unrelated to Tilley, they decided to run a search of the parties' names through the police database. The officers then learned that Tilley's daughter was a runaway from a juvenile placement in Ohio.

While the officers were gathering information, the 15 year-old girl approached one of the officers and claimed that she had been kidnapped by Tilley and Lowery. Police then took the adults into custody and transported them to the police station, where the 15 year-old told the supervising sergeant that she had been kidnapped by Lowery. Meanwhile, Tilley was placed into a secure room and she neither requested, nor was provided with, food or sleeping facilities.

The shift supervisor, Sergeant Terrence Donnelly, then read Tilley her *Miranda* rights. Sergeant Donnelly and Officer Roger Krawchyk each testified that Tilley told them she understood her rights but did not wish to make a statement. The Pittsburgh Police officers next contacted agents from the Federal Bureau of Investigation for assistance in the matter. Special Agent Todd Pruitt (Pruitt) was the first federal agent to meet with Tilley and Tilley told Pruitt that she was still aware of her *Miranda* rights and wanted to cooperate. Special Agent Pruitt testified that Tilley appeared to understand all the questions she was asked. Tilley stated, among other things, that only she, and neither of the two minor females, had been involved in a sexual relationship with Lowery. Pruitt's initial encounter with Tilley was brief, however, because he believed that she was lying to him.

After suspending his interview to gather more information from the two minor females, Pruitt, along with Special Agent Karen Davidson (Davidson), returned to speak with Tilley and confront her with newly gathered information from the two minor females regarding their sexual

involvement with Lowery. Special Agent Davidson presented Tilley with an "advice of rights" form and read it to her. Tilley stated that she understood her rights and signed the form. Pruitt testified credibly that Tilley did not ask any questions before signing the form and signed without hesitation. Tilley then admitted that the two minor females had sexual intercourse with Lowery and she herself had sexual relations with the unrelated 15 year-old female. At no time during her interaction with Davidson did Tilley mention her use of narcotics, ask for a doctor, claim any drug-dependency issues, attempt to terminate the interview, or ask for legal counsel.

Special Agent Pruitt testified credibly that based on his twelve years in law enforcement, he has extensive experience dealing with people under the influence of intoxicants, including persons who use crack cocaine or experience withdrawal from its effects. He also testified that Tilley did not appear to be impaired at the time she made her inculpatory statements. Had she been impaired, Pruitt testified that he would have expected Tilley to slur her speech, speak in fragments, appear nervous or fidgety, constantly move her head, be unable to complete her sentences, and be unable to think and process information logically. Tilley manifested none of these signs of intoxication, however.

Special Agent Davidson testified credibly that Tilley was appropriately dressed and clean, did not complain of being too hot or too cold, did not ask for food or to sleep, was not shivering or sweating, did not appear nauseated and did not say she had a headache. Additionally, Tilley provided accurate booking information, including her name, date of birth, social security number and address. Furthermore, Davidson testified credibly that Tilley did not appear to be sleep-deprived or unable to follow their conversation and seemed to be fully oriented as to time and place. Had Tilley been intoxicated, Davidson testified that she would have expected her to

slur her speech, have watery eyes, have trouble walking, and have difficulty answering questions.

In her motion to suppress, Tilley alleges, *inter alia*, that she was suffering from acute crack cocaine withdrawal at the time that she was interviewed and was therefore incapable of making a knowing, intelligent and voluntary waiver of her right to remain silent. In support of this allegation, Tilley presented the testimony of Todd Marion, M.D., who is an expert in the field of addiction treatment and psychology. Dr. Marion first met Tilley ten months after the night in question, when he interviewed her at the Allegheny County Jail. Dr. Marion also reviewed medical records indicating that Tilley was treating for both depression and chronic pain at the time of her arrest. He testified further that Tilley was suffering from a psychosis brought about by her crack addiction combined with her treatment for depression and pain at the time she was interviewed. Dr. Marion also opined that Tilley would have immediately submitted to the authority of the police and FBI and would have gone along with everything that was presented to her. He concluded, within a reasonable degree of psychological certainty, that Tilley was incapable of knowingly, intelligently and voluntarily waiving her right to remain silent.

Tilley herself also testified at the second evidentiary hearing. She testified that she became a crack cocaine addict in the spring of 2005, after being introduced to the drug by her boyfriend. Tilley permitted her boyfriend to spend all of the money she received from a personal injury settlement on crack cocaine. Additionally, her boyfriend was physically and mentally abusive towards her. Her relationship with him ended, and he was charged with burglarizing her residence. In late June 2005, Tilley met Lowery through a mutual friend, a prostitute whom she met at a crack house. Lowery then moved into Tilley's residence, began supplying her with crack cocaine and using her credit cards for cash advances to purchase more crack, which Tilley

and Lowery smoked on a daily basis.

In early August 2005, Tilley was incarcerated for missing a scheduled court hearing. During Tilley's incarceration, the 15 year-old friend of Tilley's daughter joined Lowery at Tilley's residence, and they removed Tilley's daughter from juvenile placement. Upon Tilley's release from custody, the four actors went mobile, visiting various hotels near Warren, Ohio. During this period, Lowery was verbally abusive to Tilley. They smoked crack cocaine multiple times every day, while Lowery provided marijuana to the minors. In addition, Lowery began having sexual relations with both minors. Other than telling Lowery and her daughter to stop having sexual relations, Tilley took no other actions. The parties then traveled to Pittsburgh, where they were discovered in the early morning hours of August 16, 2005.

## II.     Discussion

The government must prove the existence of a valid waiver of *Miranda* rights by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). In *Reinert v. Larkins*, 379 F.3d 76 (3d Cir. 2004), the Third Circuit cited the Supreme Court's decision in *Moran v. Burbine*, 475 U.S. 412 (1986), detailing what the government must prove to establish a valid waiver. "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Reneirt*, 379 F.3d at 88 (citing *Moran* at 421). This determination must be made in light of all the facts and circumstances of the case. "Only if the totality of the circumstances surrounding the

interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* The facts of this case demonstrate that Tilley's waiver of her *Miranda* rights was both knowing and voluntary.

    1.  **Knowledge**

Tilley argues that she was unable to knowingly and voluntarily waive her Fifth Amendment rights during her interrogation because of long-term psychosis and crack cocaine abuse. In support of her argument, Tilley offered the testimony of Dr. Marion, who indicated that Defendant cannot stand up to authority and would agree to whatever a person in a position of authority told her to do. Dr. Marion testified, based on an examination conducted more than ten months after the fact, that Tilley's use of prescription medicine for depression and chronic pain, her recent crack usage, and the withdrawal during her time in custody, coupled with her already submissive personality, would have rendered her unable to knowingly and voluntarily waive her rights on August 16, 2005.

The evidence in this case contradicts Dr. Marion's hypothesis. Both agents Pruitt and Davidson testified that Tilley exhibited none of the symptoms that they, in their experience, associate with individuals under the influence of drugs, alcohol, or other inhibitors. Tilley was advised of her *Miranda* rights three separate times, first by Sergeant Donnelly and Officer Roger Krawchyk, then by Pruitt, and finally by Davidson, prior to executing the waiver. Each time, Tilley indicated that she understood her rights, and did not ask any questions. At the hearing, Tilley confirmed that she is a high school graduate who has spoken English all her life. Not once during her interaction with any of the law enforcement officers did Tilley mention she was suffering from the effect of crack use, ask any questions about the meaning of the her rights, or in

any other way indicate that she did not understand what was happening.

On the contrary, Tilley was lucid enough to communicate accurately her name, address, date of birth, and social security number. More importantly, she was aware of the trouble she was in because she originally lied to the investigators about the sexual behavior between Lowery and the minors, and only later recanted and admitted the truth. Her initial mendacity toward the FBI agents belies the notion that she is unable to stand up to authority, and will immediately submit when confronted. In addition, it is clear from the testimony of the police officers and agents in this case that Tilley was aware of her circumstances, understood what was occurring, and did not exhibit any indications that she was suffering from the physical and psychological maladies she claims controlled her behavior. Thus, the Court concludes that she waiver her *Miranda* rights with an awareness of the nature of the right she was waiving and the consequences of doing so.

### 2.  Voluntariness

In addition to the knowledge requirement, the government must demonstrate that Tilley's waiver was voluntary, and "was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Reneirt*, 379 F.3d at 88. In *Colorado v. Connelly*, 479 U.S. 157, 168 (1986) a mentally ill defendant offered an unsolicited murder confession to a police officer, then gave further statements after waiving his *Miranda* rights. He then moved to suppress the confession because he argued that his waiver and confession were the result of "command hallucinations," and thus not voluntary. The Supreme Court reiterated that:

> the sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion. Indeed, the Fifth Amendment privilege is not concerned with moral and psychological pressures to confess emanating

> from sources other than official coercion. . . . The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word. . . . Respondent urges this Court to adopt his "free will" rationale, and to find an attempted waiver invalid whenever the defendant feels compelled to waive his rights by reason of any compulsion, even if the compulsion does not flow from the police. But such a treatment of the waiver issue would cut this Court's holding in *Miranda* completely loose from its own explicitly stated rationale. *Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that.

*Id* at 170 (internal citations and punctuation omitted). Here, Tilley has not alleged coercion, overreaching, or other inappropriate behavior on the part of the police or FBI agents. The only evidence in the record that could possibly be construed as such is the fact that, from the time of her arrest until her questioning Tilley was not given food or a bed. However, Agent Davidson testified that Tilley never asked for food or for an opportunity to sleep. In addition, Tilley has not offered any evidence that she believed such a request would be denied. Accordingly, the Court finds that the conditions in which Defendant was held were neither coercive nor the result of overreaching by the government agents. Thus, the waiver in this case was voluntary.

The facts of this case are analogous to *U.S. v. Reynolds*, 367 F.3d 294 (5th Cir. 2004). In *Reynolds*, the defendant alleged that he had recently ingested methamphetamine and had not slept in three days. Yet he was lucid during questioning and neither police officer present thought he appeared to be under the influence. The Court of Appeals for the Fifth Circuit upheld the district court's decision not to suppress the confession, because the court had determined that the government had proven the knowledge and voluntariness by a preponderance of the evidence. *Id*. at 299. Here, as in *Reynolds*, the government has demonstrated by a preponderance of the evidence, that Tilley's waiver of her *Miranda* rights was both knowing and voluntary.

8

In sum, the evidence adduced at the hearing demonstrated that Tilley was aware of her rights and knowingly, intelligently, and voluntarily signed the waiver of rights form before she made inculpatory statements. Because there was no Fifth Amendment violation, Tilley's motion to suppress will be denied.

An appropriate Order follows.

BY THE COURT:

_____
Thomas M. Hardiman
United States District Judge

Dated: August **30**, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) 2:05cr267 |
| | ) Judge Thomas M. Hardiman |
| PAMELA TILLEY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

AND NOW, this 30th day of August, 2006, upon consideration of Defendant Pamela Tilley's Motion to Suppress (Doc. No. 64) it is hereby

ORDERED that said Motion is DENIED.

BY THE COURT:

Thos M. Hardiman
Thomas M. Hardiman
United States District Judge